UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| KENYA BRYANT, | ) | Civil Action No.: 3:16-cv-2885-MGL-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| RICHLAND COUNTY RECREATION | ) | |
| COMMISSION, JAMES BROWN, III, | ) | |
| J. MARIE GREEN, BARBARA MICKENS | ) | |
| and DAVID STRINGER, in their individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

This action arises out of Plaintiff's employment with the Richland County Recreation Commission. Plaintiff alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., and state law causes of action for defamation, civil conspiracy and public policy discharge. Presently before the court is Defendants' Motion to Dismiss (Document # 5) Plaintiff's claims for defamation, civil conspiracy and public policy discharge. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

## II.    FACTUAL ALLEGATIONS

At all times relevant to the allegations set forth in the amended complaint, Plaintiff, an African-American male, was employed as the Assistant Executive Director at the Richland County Recreation Commission (RCRC). Am. Compl. ¶ 1. Defendant Brown is the Executive Director of

the RCRC, Defendant Stringer is the Division Head of Human Resources for the RCRC and Defendants Green and Mickens serve on the board for the RCRC. Am. Compl. ¶¶ 3-6. As Assistant Executive Director, Plaintiff reported to Brown, the executive Director. Am. Compl. ¶ 10.

Plaintiff alleges that beginning in the spring of 2014, Brown began asserting that Plaintiff was involved in a sexual relationship with one of his staff members, the Division Head of Finance, Andrea James. Following a Division Head meeting, Brown commented to Plaintiff, "You're probably f***ing her." Am. Compl. ¶ 11. Plaintiff alleges that in the summer of 2015, Brown forbade Plaintiff from entering James' office. Brown continued to make false comments that Plaintiff was involved in an improper sexual relationship with James. Am. Compl. ¶ 12. Plaintiff alleges that Brown continued to publish false statements regarding Plaintiff and Ms. James to other RCRC employees, RCRC Board members, and others. Am. Compl. ¶ 13.

On November 24, 2015, Brown decided to move two employees, Tiyana Henley, the administrative assistant to the Director of Athletics (who was Brown's son), and Demetria Goodwin, the Director of Programming, out of their positions. Plaintiff advised against this action. Am. Compl. ¶ 14. On November 30, 2015, Brown called a meeting with Plaintiff and another Division Head, Taurus Lewis, and told them that they did not have faith in him anymore. Am. Compl. ¶ 15. Later, on December 2, 2015, Brown told Plaintiff that his advice was correct and that Plaintiff needs to tell him to "sit down and shut up" when he is acting irrationally. Am. Compl. ¶ 16. Nevertheless, Plaintiff alleges that two days later, Brown told RCRC employees that he would fire both Plaintiff and Lewis. Am. Compl. ¶ 17.

On December 15, 2015, an investigation into sexual harassment claims made against Brown began. Stringer informed Plaintiff he would likely be called as a witness. Am. Compl. ¶ 18.

Plaintiff participated in the investigation upon request.  On December 23, 2015, Stringer asked Plaintiff if he had spoken to Brown about his involvement in the investigation.  Plaintiff had not. Stringer told Plaintiff he did not want Brown to think Plaintiff was "keeping secrets."  Am. Compl. ¶ 19.

On January 16, 2016, Brown called an unscheduled staff meeting, during which, Plaintiff alleges, he acted hostile and made threats and inappropriate statements.  Plaintiff alleges that during the meeting Brown announced that the RCRC Board[1] wanted there to be a buffer between him and the staff and that Tara Dickerson was promoted to a newly created position of Chief of Staff.  Among other threats and inappropriate statements, Plaintiff alleges that Brown stated that he was too good to the staff and they made too much money, specifically referring to Plaintiff, but that was going to change.  Brown also allegedly stated that if the staff did not like the way things were around RCRC, they could just quit, reminding them that South Carolina is an at-will state.   Am. Compl. ¶ 22. Plaintiff alleges Brown said a board member, Marie Green, told him that "black people don't listen to black people" and that he needs a white face, i.e., Dickerson, to "crack the whip" on the black people.  Am. Compl. ¶ 23.  Since Dickerson was appointed as Chief of Staff, Plaintiff has been excluded from decision-making processes and was isolated from Brown and Stringer.  Am. Compl. ¶ 24.

---

[1]In 2014, the board received anonymous letters complaining about Brown and the RCRC, but Brown made it clear that he had at least four votes on the board to avoid any action against him.  He stated that he helped Marie Green and Barbara Mickens, members of the board, financially and that other members of the board, Furgess and Martin, were on his side.  On September 22, 2014, a motion was passed by a 5-2 vote to hire an attorney to conduct an investigation of Brown.  However, Martin and Furgess later rescinded their vote and a new motion to rescind the earlier decision for an investigation, passed by a 4-3 vote. Am. Compl. ¶ 16.

On March 14, 2016, RCRC issued a new organizational chart, which placed Dickerson at the same level as Plaintiff.  Am. Compl. ¶ 25.  On March 18, 2016, Plaintiff submitted a letter documenting not only what he believed to be efforts to eliminate his position, but also defamation and retaliation against him from taking part in the sexual harassment investigation.  Am. Compl. ¶ 26.

On March 21, 2016, the Board met for their regularly scheduled meeting and took an executive session to discuss a personnel matter.  No action was taken, but a special called meeting was scheduled for April 4, 2016. Am. Compl. ¶ 27.  On April 4, 2016, the Board met to discuss the personnel matter in executive session.  Board Member Furgess motioned to support Brown, which passed with a 5-2 vote.  Am. Compl. ¶ 28.  The next day, April 5, 2016, Brown, with the support of the other Defendants, terminated Plaintiff's employment.  The reason given for the termination was that "the current organizational structure does not support the need for this position."  Am. Compl. ¶ 29.

## III.    STANDARD OF REVIEW

Defendants seek dismissal of Plaintiff's defamation, civil conspiracy and public policy discharge claims pursuant to Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556

U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003). The court may consider documents attached to a complaint or motion to dismiss "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir.2006)).

## IV.    DISCUSSION

### A.    Defamation

In his defamation claim, Plaintiff alleges that RCRC and Brown falsely accused Plaintiff of having an improper sexual relationship with one of his staff members.  He alleges that these Defendants made the false publications to Plaintiff's coworkers, RCRC Board members and others on several occasions in 2014, 2015, and 2016.  Plaintiff alleges, for example, that Brown told the Director of Finance at RCRC that Plaintiff and James were having sex and on other occasions Brown said the same to the Division Head of Facility Operations and others.  Plaintiff further alleges that

Brown's directive to forbid James from going into Plaintiff's office and the removal of James from reporting directly to Plaintiff further give rise to a defamatory inference by acts in addition to words. Am. Compl. ¶ 46. Plaintiff alleges that the defamatory words and actions of Brown and other RCRC personnel were made within the course and scope of their employment and have directly and indirectly presented to the public at large that Plaintiff was unchaste and unfit in his profession. Plaintiff asserts that these defamatory publications are especially harmful because Plaintiff is happily married and, thus, they imply adultery. Am. Compl. ¶ 47. Plaintiff alleges that Defendants knew these statements were false and that they made them with malicious intent to harm Plaintiff and in reckless disregard for the truth. Am. Compl. ¶ 48.

The essential elements of a claim for defamation under South Carolina law are 1) a false and defamatory statement; 2) unprivileged publication to a third party by defendant; 3) fault on the part of the defendant publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Erickson v. Jones Street Publishers, LLC, 368 S.C. 444, 455, 629 S.E.2d 653, 664 (2006). With respect to the fourth element, defamation that is actionable irrespective of special harm is defamation per se, which includes defamatory statements regarding 1) the commission of a crime, 2) contraction of a loathsome disease, 3) adultery, 4) unchastity, or 5) unfitness in one's business or profession. Fountain v. First Reliance Bank, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (S.C.2012) (citing Goodwin v. Kennedy, 347 S.C. 30, 36, 552 S.E.2d 319, 322-23 (S.C.Ct.App.2001)).

Defendants argue that Plaintiff has failed to state a claim for defamation that is plausible on its face because Plaintiff has only included a formulaic recitation of the elements necessary for such a claim without any factual allegations in support. When reviewing a motion to dismiss, the court

-6-

must view the factual allegations and all reasonable inferences in favor of the plaintiff.  Nemet

Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir.2009).  Plaintiff alleges that

Brown began making comments about Plaintiff being in an improper sexual relationship with Andrea

James, Division Head of Finance and Plaintiff's subordinate, during the spring of 2014.  Following

a Division Head meeting, Brown commented to Plaintiff, "You're probably f***ing her."  Am.

Compl. ¶ 11.  Plaintiff alleges that in the summer of 2015, Brown forbade Plaintiff from entering

James' office.  Brown continued to make false comments that Plaintiff was involved in an improper

sexual relationship with James.  Am. Compl. ¶ 12.  Plaintiff alleges that Brown told the Director of

Finance and the Division Head of Facility Operations, Board members, and other employees at

RCRC that Plaintiff and James were having sex.  Am. Compl. ¶ 46.  Plaintiff alleges that these

comments, along with Brown's actions of forbidding James to enter Plaintiff's office, presented to

the public at large that Plaintiff was unchaste and unfit in his profession.  Plaintiff asserts that these

defamatory publications are especially harmful because Plaintiff is happily married and, thus, they

imply adultery.  Am. Compl. ¶ 47.  Plaintiff alleges that Defendant Brown made the alleged

defamatory statements with "malicious intent to harm," Am. Compl. ¶ 48.  These factual allegations

are sufficient to state a cause of action for defamation that is plausible on its face.

Defendants also argue that any alleged comments made by Brown to other employees of the

RCRC enjoy a qualified privilege.  "A communication made in good faith on any subject matter in

which the person communicating has an interest or duty is qualifiedly privileged if made to a person

with a corresponding interest or duty even though it contains matter which, without this privilege,

would be actionable."  Murray v. Holnam, Inc., 344 S.C. 129, 140-41, 542 S.E.2d 743, 749

(SC.Ct.App. 2001) (citing Constant v. Spartanburg Steel Prods., Inc., 316 S.C. 86, 447 S.E.2d 194

(1994); Prentiss v. Nationwide Mut. Ins. Co., 256 S.C. 141, 181 S.E.2d 325 (1971)).

"Communications between officers and employees of a corporation are qualifiedly privileged if made

in good faith and in the usual course of business." Id. (citing Conwell v. Spur Oil Co., 240 S.C. 170,

125 S.E.2d 270 (1962)).    Defendants argue that, because Plaintiff made a complaint of

discrimination, RCRC had a duty to investigate that claim, which required the company to make

inquiries into Plaintiff's conduct.  However, "the protection of a qualified privilege may be lost by

the manner of its exercise. . . . [F]or a communication to be privileged, the person making it must

be careful to go no further than his interests or his duties require."  Id. (citations omitted).  The

question of whether the privilege has been abused is one for the jury, Id. at 140, 542 S.E.2d at 749,

and, thus, a determination of whether Brown's alleged defamatory statements were privileged cannot

be made at this stage of the litigation.

Finally, Defendants argue that Plaintiff cannot name both the RCRC and Brown on this cause

of action because Brown is an agent of the RCRC and, thus, under the South Carolina Tort Claims

Act (SCTCA),  S.C. Code Ann. §§ 15–78–10 et seq., the RCRC is the only proper party.  Section 15-

78-70(a) of the SCTCA provides that "an employee of a governmental entity who commits a tort

while acting within the scope of his official duty is not liable therefore except as expressly provided

for in subsection (b)."  Subsection (b) provides that "[n]othing in this chapter may be construed to

give an employee of a governmental entity immunity from suit and liability if it is proved that the

employee's conduct was not within the scope of his official duties or that it constituted actual fraud,

actual malice, intent to harm, or a crime involving moral turpitude."  Defendants argue that none of

the exceptions provided in subsection (b) apply here.  Plaintiff alleges that Defendant Brown made

the alleged defamatory statements with "malicious intent to harm," Am. Compl. ¶ 47, but Defendants

-8-

argue that this is just a formulaic recitation of the law without any factual allegations in support. As stated above, the court must view all factual allegations and the reasonable inferences therefrom in favor of the plaintiff. Here, Plaintiff has provided sufficient factual allegations of actual malice to state a claim that would take the defamation cause of action outside the SCTCA such that Brown could be held personally liable. In the alternative, if no actual malice is found, RCRC could be held liable for the alleged defamatory statements made by Brown. See Murray, 344 S.C. at 542 S.E.2d at 748 (noting that "a principal may be held liable for defamatory statements made by an agent acting within the scope of his employment or within the scope of his apparent authority"); see also Rule 8(d)(2) and (3) (allowing for the pleading of alternative theories of recovery). Thus, dismissal of Plaintiff's defamation cause of action is not appropriate.

### B. Civil Conspiracy

In his civil conspiracy claim, Plaintiff alleges that Defendants Brown, Stringer, Green, Mickens, and others met at various times and places, schemed, conspired, and planned in secret, outside the scope of their official duties and supervisory roles, to harass and ostracize Plaintiff in an effort to harm him and cause him to lose his position with RCRC. Plaintiff alleges that Brown had personal motivations to harm Plaintiff because Plaintiff opposed his directives and participated in the investigation into claims of sexual harassment against Brown. He further alleges that Stringer, Mickens, and Green were personally motivated to support Brown and, thus, joined in the conspiracy with him. Plaintiff alleges that these Defendants used their positions of power for the personal and improper reason of isolating and ostracizing Plaintiff, stripping him of his job duties and ultimately terminating his employment. Plaintiff alleges that these Defendants participated in this conspiracy as part of a personal and malicious agenda to cause Plaintiff special harm, including causing him to

be ostracized and isolated in the work environment, extreme emotional suffering, embarrassment, humiliation, and attorneys' fees and costs.  Am. Compl. ¶¶ 51-55.

In South Carolina, the tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. Vaught v. Waites, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App.1989).  Defendants first argue that Plaintiff's civil conspiracy claim fails because she fails to allege special damages caused by the alleged conspiracy.  "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint," and "because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other cause of action." Hackworth v. Greywood at Hammett, LLC, 385 S.C. 110, 682 S.E.2d 871, 874 (2009) (internal citations omitted). While general damages "are the immediate, direct, and proximate result of the" tortfeasor's conduct, special damages "are the natural, but not the necessary or usual, consequence of the" tortfeasor's conduct. Id. at 116–17, 682 S.E.2d at 875.  Plaintiff specifically alleges that the alleged conspiracy by the individual Defendants "cause[d] him special damages, including causing him to be ostracized and isolated in the work environment, extreme emotional suffering, embarrassment, humiliation, and the loss of his employment, as well as incurring attorneys' fees and costs."  Am. Compl. ¶ 55.  Plaintiff does not allege that he suffered ostracization, isolation, embarrassment, or humiliation with respect to his other causes of action.  Thus, his allegations of special damages arising from the alleged civil conspiracy are sufficient to survive a Rule 12(b)(6) motion.

Defendants also argue that Plaintiff, as an at-will employee, cannot maintain an action for civil conspiracy against his employer.  Under Ross v. Life Ins. Co. of Virginia, 273 S.C. 764, 765,

259 S.E.2d 814, 815 (1979), an at-will employee may not maintain a civil conspiracy action against his employer where the employee alleges that his employer conspired with others to terminate his employment. See also Faile v. Lancaster County, S.C., No. 0:11-cv-2206-CMC, 2013 WL 786447, *4 (D.S.C. Mar. 1, 2013) (holding that an at-will employee cannot sue his employer "or anyone acting within his authority on behalf of his employer" for civil conspiracy arising out of his termination). However, in Reed v. Aiken County, No. 1:09-cv-1744-MBS-TER, 2010 WL 2985805, *3 (D.S.C. July 26, 2010), the court held that "the at-will employment doctrine articulated in Angus [v. Burroughs & Chapin Co., 368 S.C.167, 628 S.E.2d 261 (S.C.2006)] and Ross does not govern actions by employees based on harm other than termination such as isolation and ostracization." Although Plaintiff does allege that the individual Defendants conspired to strip him of his job duties and cause him to lose his position with RCRC, he also alleges that they conspired to cause him ostracization, isolation, humiliation, and embarrassment. These allegations are sufficient to allege a conspiracy beyond termination, and, therefore, dismissal of this cause of action at this stage of the litigation against is premature.

Finally, Defendants argue that Plaintiff's civil conspiracy claim fails based upon the intercorporate conspiracy doctrine, which provides that a corporation cannot conspire with itself. See McClain v. Pactiv Corp., 360 S.C. 480, 486, 602 S.E.2d 87, 90 (S.C.Ct.App. 2004) (citing Anderson v. S. Ry. Co., 224 S.C. 65, 69, 77 S.E.2d 350, 351 (1953)). However, this doctrine applies to "a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." McMillan v. Oconee Mem'l Hosp., Inc., 367 S.C. 559, 565, 626 S.E.2d 884, 887 (2006); see also Cricket Cove Ventures, LLC v. Gilland, 390 S.C. 312, 325, 701 S.E.2d 39, 46 (Ct. App. 2010) ("In McMillan, our Supreme Court

-11-

limited this 'intracorporate conspiracy' doctrine to persons acting within the scope of their employment."). Plaintiff alleges that the individual Defendants were "acting outside of the course and scope of their employment" to cause special damages to Plaintiff. Am. Compl. ¶ 55. The Plaintiff further alleges that the civil conspiracy "was done as a part of a personal and malicious agenda to harm the Plaintiff." Id. These facts are sufficient to survive dismissal at this stage of the litigation.

### C.     Public Policy Discharge

Plaintiff alleges a state law claim for wrongful termination in violation of public policy, in the alternative to his retaliation claim under Title VII. Even though Plaintiff claims that this cause of action is asserted in the alternative to his Title VII retaliation claim, he does not allege here that Defendants retaliated against him for participating in the investigation into a coworker's charge of sexual harassment or for complaining of discriminatory conduct. He alleges that Defendants terminated him in retaliation for reports of misconduct, violations of the law, nepotism and "the willful obstruction to the performance of Plaintiff's mandated duty to report and advise." Plaintiff alleges that "public policy requires that the Richland County Recreation Commission, a state body, as well as its Executive Director, conform to appropriate conduct and standards as required by state statute and other appropriate laws mandating the same." Plaintiff alleges that RCRC and Brown's decision to terminate him in retaliation for reporting their violations violated public policy. Am. Compl. ¶¶ 57-59.

Under the public policy exception to South Carolina's at-will employment doctrine, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. Ludwick v. This

Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213 (1985). However, it is well-established that a public policy discharge claim is proper only when a plaintiff has no available statutory remedy. See Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, *4 (4th Cir.1998) (applying South Carolina law and holding public policy discharge claim not allowed where employee had remedy under Title VII); Bolin v. Ross Stores, Inc., No. 08–cv–02759–MJP, 2009 WL 363990, *4 (D.S.C. Feb.11, 2009) (citing Zeigler v. Guidant Corp., No. 2:07-3448-MBS-RSC, 2008 WL 2001943 (D.S.C.2008));  Ramsey v. Vanguard Servs., Inc., No. 07–00265, 2007 WL 904526 (D .S.C. Mar. 22, 2007) (granting defendant's motion to dismiss employee's wrongful termination claim because the plaintiff had an available statutory remedy under the South Carolina Payment of Wages Act); Lawson v. S.C. Dep't of Corrections, 340 S.C. 346, 350, 532 S.E.2d 259, 261 (S.C.2000) (public policy discharge claim not allowed where employee had remedy under state Whistleblower Act); Stiles v. Am. Gen. Life Ins. Co., 335 S.C. 222, 228, 516 S.E.2d 449, 452 (1999) ("As these cases make clear, the Ludwick exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists") (concurring opinion); Dockins v. Ingles Markets, Inc., 306 S.C. 496, 498, 413 S.E.2d 18, 19 (S.C.1992) (public policy discharge claim not allowed where employee had remedy under Fair Labor Standards Act); Epps v. Clarendon County, 304 S.C. 424, 426, 405 S.E.2d 386, 387 (S.C.1991) (public policy discharge claim not allowed where employee had remedy under 42 U.S.C. § 1983).

Here, Plaintiff does have a remedy for retaliatory discharge, and has pleaded as much in his retaliatory discharge cause of action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Plaintiff argues that his wrongful termination claim is pleaded in the

-13-

alternative, and, as such, he is not precluded from asserting it. Plaintiff argues that, if he is unsuccessful on his Title VII retaliation claim, he should be able to pursue a claim for wrongful discharge under state law. However, the case law provides that a wrongful termination cause of action is available "to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists," Stiles, 335 S.C. at 228, 516 S.E.2d at 452, not to provide a remedy when a plaintiff is unsuccessful under an available statutory remedy. The case law does not provide that a plaintiff must elect either a statutory remedy or a common law remedy, as Plaintiff seems to suggest. Indeed, courts have dismissed claims for wrongful discharge even where the plaintiff has not asserted a cause of action under the appropriate statutory provision. See, e.g., Dockins, 406 S.C. at 498, 413 S.E.2d at 19; Epps, 304 S.C. at 426, 405 S.E.2d at 387. Thus, it follows that the prohibition is not from a double recovery, but from pursuing a claim under common law when a statutory remedy exists. Therefore, to the extent Plaintiff brings this cause of action for termination in retaliation for engaging in conduct protected by Title VII, this statute provides a remedy for such retaliatory discharge, and, thus, dismissal of Plaintiff's public policy discharge claim is proper.

Furthermore, the remainder of Plaintiff's state law wrongful discharge claim is subject to dismissal as well because Plaintiff fails to identify a clear mandate of public policy violated by Defendants. The South Carolina Supreme Court has expressly recognized at least two situations in which an action for wrongful discharge in violation of public policy can be maintained: (1) when an employer requires an employee to violate a criminal law as a condition of maintaining employment, see Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213, 214-16 (1985), and (2) when the act of terminating an employee is itself in violation of a criminal law, see Culler v. Blue

-14-

Ridge Elec. Coop., Inc., 309 S.C. 243, 422 S.E.2d 91, 92–93 (1992).  "South Carolina courts have been careful to narrowly interpret the exception, often declining to extend the exception beyond the bounds of Ludwick and Culler."  Desmarais v. Sci. Research Corp., 145 F. Supp. 3d 595, 598 (D.S.C. 2015) (collecting cases).  The South Carolina Supreme Court has held that "for purposes of juridical application it may be regarded as well settled that a state has no public policy, properly cognizable by the courts, which is not derived or derivable by clear implication from the established law of the state, as found in its Constitution, statutes, and judicial decisions." Batchelor v. Am. Health Ins. Co., 234 S.C. 103, 107 S.E.2d 36, 38 (1959).  Plaintiff points to no statute, constitutional protection, or judicial decision setting forth any "clear mandate" of public policy.  Accordingly, dismissal is appropriate.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss (Document # 30) be granted as to Plaintiff's public policy discharge cause of action and denied as to his defamation and civil conspiracy causes of action.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 1, 2016
Florence, South Carolina